The opinion of the court was delivered by
McEnery, J.
The plaintiff alleges that her son, George J. Dandie, on the 14th June, 1889, while employed as flagman on yard locomotive No. 711, of the defendant company, at the Morgan ferry in the City of New Orleans, was run over and instantly killed while performing his duties as flagman by said locomotive; that the death of her son was fine to the fault and negligence of defendant and its employés in running the engine at a high rate of speed, without having a lookout in the cab, and failing to make proper provisions for the safety of her son while employed in the capacity of flagman. She prays for damages in the sum of $15,000.
The defendant’s answer is a general denial, with the exception of certain admissions, and alleges that the death of plaintiff’s son was accidental and was contributed to by imprudence, fault and want of care on the part of the deceased son. There was judgment for the plaintiff, on the verdict of the jury, for the sum of $5000.
The facts are that the plaintiff’s son was at the time of his death in the service of defendant company as flagman. His duties were of *688 such a character as are required on ail railroads. The engine which ran over the deceased was used for the purpose of taking cars from the ferryboat at the Morgan landing and moving them backward and forward, forming them into a train, or placing them into position to be loaded. The flagman rode on the car when backing and when going forward in front of the engine on a footboard placed there for that purpose.
When the train approached a crossing it was the duty of the deceased to jump down, go to the ¡crossing and protect it with a red flag. When a switch was approached which needed attention, he jumped down, ran to it, and turned it. When the engine came near him he jumped on it, ready again to perform the same duties. Dan-die, the flagman, had been engaged in this work in the service of the defendant for some nine months. He was familiar with his duties, and had been instructed to get off the engine on the side of the track, either the right or the left, as occasion required. This was the safest manner for him to perform his duties. By standing near the end of the footboard the flagman can be seen by the engineer, if he is on the right, and by the fireman if he is on the left. If he stands in the center he can be seen by neither. If the engine is going too fast for the flagman to jump, it is his duty to signal the engineer, if he is on the right of the footboard; and if on the left, the fireman, who immediately communicates with the engineer. This signal is made with the flag, hat, or hand. It is immediately obeyed, and the speed is slackened so that the flagman can jump with safety. If it is not slackened, he is not compelled to jump, but it is his duty to stand on the footboard. There were no obstacles to prevent the deceased from jumping to the side of the track, which was in a condition that he could do so with comparative safety. The footboard for the flagman extends all the way across the front of the engine in order that he may pass from one side to the other to alight on either side of the track according to the position of the switch or crossing.
There is a wide difference of opinion as to what rate of speed the engine was going. Some of plaintiff’s witnesses put it a high rate, while defendant’s witnesses fix the rate at not more than six miles per hour.
On the day of the accident George Dandie was standing near the center of the footboard where the engineer and the fireman could not see him. When about fifty feet from the switch, which he had *689 to turn, Dandie jumped in front of the engine between the rails and was overtaken and run over by it.
The duties which the deceased, George Dandie, had to perform necessarily involved risks of a dangerous character. All occupations do not offer the same immunities from danger. They differ in this respect very materially. The employé must judge of these risks and determine whether he will undertake them; The deceased entered the employment of the defendant company as a flagman and switch-man with a full knowledge of the character of the service required of him and the dangers incident to the employment. He assumed all these risks when he entered into the service of the defendant company. The defendant company did not increase the risk assumed by the deceased and to which he subjected himself. There was no defect in any of the appliances provided by the defendant company for the performance of the duties required of him, and there was therefore no negligence. Satterlee vs. Morgan Co., 35 An. 1166; Wallis vs. Railroad Co., 38 An. 159; Tuttle vs. Railroad Co., 122 U. S.; Wharton, Negligence, Sec. 214; Hart vs. H. C. Fricke Coke Co. (Pa.) 18 Atlantic R. 1011.
The flagman Dandie had but one way to perform his duty with safety to himself. He selected another and a more dangerous one by getting down in front of the engine between the rails.
The risk'was unnecessarily assumed, and was at his own peril and on his own responsibility. Id. 216.
The deceased was a fellow-servant with the engineer and fireman. They were employed by the same corporation, and engaged in the performance of the same duty. The duties of one in this particular service were dependent upon the other. The switch had to be closed by the flagman before the engineer could drive his engine beyond it, and the flagman by signaling the engineer could regulate the speed of the engine so as to perform his duties with dispatch and certainty and without unnecessary risk. The engineer and fireman were competent and skilful and had been for many years in the service of the defendant company. The company was not in fault in their employment, and the continuing of them in its service. Conceding, therefore, that the engine was going at a high rate of Speed, the plaintiff can not attribute this negligence to the defendant. The instructions to the engineer were not to g'o beyond six miles an hour. If the en *690 gine on the day of the accident exceeded this limit, it was the fault of the engineer and not that of the company, so far as the plaintiff is concerned, and the plaintiff can not recover for this negligence on the part of a fellow-servant of the deceased, when no fault can be attributed to the employer. Tours vs. Railroad Co., 37 An. 632; Hankins vs. N. Y., L. E. & W. R. Co., 8 N. Y. S. 272.
The evidence satisfies us that there were no imperfections in the appliances provided by the defendant for the performance of the duties required by the deceased, and that there was no lack of care on the part of the defendant in the employment and continuing in service of the engineer and fireman on the engine on which the deceased was in service as flagman, and that the deceased contributed to his unfortunate death by his own imprudence.
When the evidence shows contributory negligence on the' part of the injured party, the plaintiff can not recover damages.
This principle is well established in our jurisprudence. Schwartz vs. R. R. Co., 30 An. 15; Childs vs. R. R. Co., 33 An. 154; Deikman vs. R. R. & S. Co., 40 An. 790.
It is, therefore, ordered, adjudged and decreed that the judgment appealed from be avoided, reversed and annulled, and it is ordered that plaintiff’s demand be rejected with costs of both courts.